Benjamin A. Hamilton (#6238)
Attorney for Defendant
356 East 900 South
Salt Lake City, Utah 84111
Telephone: (801) 322-3622

FILED
CLERK U.S. DISTRICT COURT

16 DEC 03 PM 1: 50

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 1:02CR58<br>2:02-CR-432 TC |
| Plaintiff, | : | DEFENDANT'S INCORPORATED MEMORANDUM IN SUPPORT |
| -v- | : | OF MOTION TO SUPPRESS EVIDENCE BASED ON ILLEGAL |
| FABIAN LOPEZ-OCHOA, | : | ENTRY INTO DEFENDANT'S RESIDENCE |
| Defendant. | : | |
| | | JUDGE TENA CAMPBELL |

The defendant, FABIAN LOPEZ-OCHOA, by and through his attorney, Benjamin A.

Hamilton, hereby submits the following memorandum in support of his motion to suppress

evidence based on an illegal entry into and search of the defendant's residence.

STATEMENT OF FACTS

On May 22, 2002, at approximately 10:00 p.m., Special Agent Troy Burnett of the F.B.I,

and Deputy Ryan Read of the Weber County Sheriff's Office went to a home in Ogden City in

Utah. Deputy Read testified that they had received information from a private citizen that an

individual named Louis was selling drugs from that location. (Tr. 4/25/03 at 6). Deputy Read

testified that the officers were told that the individual named Louis drove a gray Chevy Beretta.



When the officers arrived at the home, a gray Chevy Beretta was parked in front. (Tr. 4/25/03 at 7). The officers knocked on the front door and inquired about Louis and were told that the Louis lived in the back basement apartment. The officers then knocked on the door to the basement apartment and the Defendant, Fabian Lopez-Ochoa, answered the door. (Tr. 4/25/03 at 8-9).

Deputy Read asked Fabian if he was Louis and Fabian responded that he was not Louis. Deputy Read then asked Fabian if Louis lived there and Fabian responded that Louis did not live there. Deputy Read testified that he then asked Fabian if Deputy Read could see Fabian's identification. (Tr. 4/25/03 at 9). Fabian informed Deputy Read that his identification was in his bedroom downstairs. Deputy Read testified that he asked him if "we could go get his I.D." and Fabian responded by saying, "Okay." (Tr. 4/25/03 at 10).

Fabian testified that after he told the deputy that he had his identification in the bedroom downstairs, as far as he could understand the officers, he was told to go and get it and they would wait for him at the door. (Tr. 4/25/03 at 55). Fabian further testified that the officers did not use the word "we" in requesting the retrieval of the identification. When the officers told him to get the identification, Fabian left the door open and went to get the identification. (Tr. 4/25/03 at 10).

The officers followed Fabian down the stairs and through a small living room area to the bedroom. Deputy Read testified that the bedroom had a card table with a digital scale and a brown paper bag that had a large amount of money next to the scales inferring that he saw the money in the bag before the arrest of the defendant. (Tr. 4/25/03 at 11). Fabian testified that the brown paper bag was closed at the top. (Tr. 4/25/03 at 56). Fabian's testimony was un-rebutted by the government's witnesses.

2

While Fabian retrieved his identification from his wallet, which was also on the card table, Special Agent Burnett nodded to Deputy Read directing Read to a plastic grocery bag which was on a shelf inside an open closet. (Tr. 4/25/03 at 12). Deputy Read testified that the bag "was tied tightly so the plastic bag was tight, which made it kind of see-through." (Tr. 4/25/03 at 12). Deputy Read continued his testimony that through this plastic grocery bag he could see some white powder and some large chunks that looked like cocaine. (Tr. 4/25/03 at 12). Deputy Read said that as he stepped closer to the bag that he could smell a very strong distinctive odor of cocaine. (Tr. 4/25/03 at 13).

It was later discovered that the plastic grocery bag that was tied in a tight knot had five ziplock baggies that were all sealed and zipped closed, containing very little powder and mostly rock cocaine. (Tr. 4/25/03 at 30-31). Deputy Read could not see the five individual ziplock bags through the grocery bag. (Tr. 4/25/03 at 37). Just as Deputy Read allegedly smelled the odor of cocaine, Fabian handed him his identification that identified him as Fabian Lopez-Ochoa. At that point Deputy Read placed Fabian in handcuffs and told him he was under arrest. (Tr. 4/25/03 at 13). The arrest was based on the "very distinctive odor of cocaine" coming from the bag and what the officer stated he could see through the opaque grocery bag. (Tr. 4/25/03 at 36-37).

On December 12, 2002, a motion to suppress was filed by prior counsel for defendant. Document 16. The motion challenged the legality of the search of the apartment. The motion states that consent to enter and search the apartment was not given by the defendant. Document 16.

On April 25, 2003, after new counsel was appointed an evidentiary hearing was held on the motion to suppress. Counsel for the defendant filed a memorandum in support of the motion to suppress on June 30, 2003. Document 52. On November 14, 2003, a second evidentiary hearing was held on the motion to suppress. At that hearing counsel for the defendant withdrew his previously filed affidavit in support of his motion to suppress and presented issue limited rebuttal evidence. Over counsel for the defendant's objection this Court allowed the government to present evidence from witnesses not relevant to the defendant's rebuttal evidence. (Tr. 11/14/03 at 41-43).[1]

Counsel for the defendant now submits this Memorandum as defendant's entire argument in support of the defendant's motion to suppress. This Memorandum has been incorporated pursuant to the Court's request to incorporate the entire argument into one memorandum. (Tr. 11/14/03 at 82).

---

[1] The defendant asserts that this court's actions at the evidentiary hearing on the motion to suppress violated the defendant's rights to procedural Due Process. The defendant believes that this Court should not have allowed the government to present testimony that exceeded the scope of the defendant's rebuttal testimony. To do so violated the defendant's Due Process rights. In reviewing United States Supreme Court case law the defendant asserts that a procedural Due Process balancing test shows the Court erred in this case. In Mathews v. Eldridge, 425 U.S. 319 (1976), the United States Supreme Court formulated a balancing test that weighs the strength of the private interest affected by the official action along with the risk of erroneous deprivation of the interest against the government interest of the function involved. In this case the interest was the right to present a rebuttal at an evidentiary hearing and limit the government's response to the issue raised by the defense in its rebuttal. The Court's actions at the hearing on November 14, 2003, violated the defendant's Due Process Rights.

**1. The Entry into the Defendant's Residence was Unlawful.**

Physical entry into a person's residence "is the chief evil against which the wording of the Fourth Amendment is directed." Welsch v. Wisconsin, 466 U.S. 740 748-749 (1984). A search conducted without a warrant is presumptively unreasonable, subject only to certain specifically established and delineated exceptions. See Coolidge v. New Hampshire, 403 U.S. 443, 454-455 (1971). A warrantless search may be deemed "reasonable" for purposes of the Fourth Amendment if it has been voluntarily consented to by a person lawfully in control of the property searched. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). The government has the burden of proving that consent was freely and voluntarily given and that no duress or coercion, express or implied existed. Bumper v. North Carolina, 391 U.S. 543, 548 (1968). In determining whether consent was obtained this Court must consider the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. at 226-227.

**A. Acquiescence to Government Authority is not Consent.**

In this case the defendant testified that when requested for his identification he left the door open and went to retrieve it. He did not invite the officers back with him to obtain the information. The officer's entry into the residence was unlawful. Judicial caution to protect the home is so "elevated" that mere acquiescence to government authority is insufficient to qualify as voluntary consent. United States v. Shaibu, 920 F.2d 1423, 1426 (9th Cir. 1989)(quoting Bumper v. North Carolina, 391 U.S. 543, 548 (1968)). The Ninth Circuit, for example, has refused to

infer implied consent in similar circumstances, determining that to do so "would exceed the scope of any recognized exceptions to the Fourth Amendment's bar to warrantless entry. United States v. Shaibu, 920 F.2d at 1427. In Shaibu, the defendant answered the door in response to police officers who were looking for another man. Id. at 1425. The defendant turned and walked back into his apartment, leaving the door open. The detectives then followed the defendant inside. Shaibu did not ask them to wait outside, to leave or to produce a search warrant. Id. The court determined that Shaibu's mere acquiescence to the police's request for the defendant to look for another suspect did not amount to free and voluntary consent for a search of Shaibu's apartment.

The stringent standards by which the Fourth Amendment protects the privacy of a person's dwelling prohibits this Court from inferring that Mr. Lopez-Ochoa's consent simply based on the fact that he turned to get his identification and left the door open. The defendant's actions were done merely in compliance with the agents' request for identification. Additionally, the fact that the defendant left the door to his apartment open when he turned to retrieve the identification was not sufficient to infer consent to a search of the entire premises. When viewed in the totality, the agents' failure obtain consent to search or to enter the apartment resulted in an unlawful search. The evidence obtained by the unlawful search should be suppressed.

**B. Failure to Object to the Officer's Entry is not Implied Consent.**

The defendant's failure to object to the entry of police into his home is not sufficient to establish "free and voluntary consent." United States v. Johnson, 333 U.S. 10, 17 (1948). See also United States v. Shaibu, 920 F.2d 1423, 1425 (9th Cir. 1990); and United States v. Gonzalez,

6

71 F.3d 819 (11th Cir. 1996). Further, "there is no authority that an open door gives police legal grounds to enter the home without explicit request when they infer consent from mere acquiescence." United States v. Impink, 728 F.2d 1228, 1233 (9th Cir. 1984). The courts have been reluctant to shift the burden from the government to show "unequivocal and specific" consent to the defendant, who would have to prove unequivocal and specific objections to a police entry, or be found to have given implied consent. United States v. Shaibu, 920 F.2d at 1426.

In the instant case, to require the defendant to prove an "unequivocal and specific objection to police officers entering an searching his home would be unduly burdensome. Police officers asked the defendant if he had any identification. They did not ask if they could enter or search his home while he went to get the information. Mr. Lopez-Ochoa's failure to actively or verbally deny police access to the inside of his residence cannot be considered "unequivocal" or "specific" as required by Schneckloth v. Bustamonte, supra. Therefore, the evidence seized upon entering the defendant's residence was unlawfully obtained and should be suppressed.


**2. Evidence Obtained as a Result of the Illegal Entry into the Residence and Subsequent Search of the Defendant and his Residence should be Suppressed as Fruit of the Poisonous Tree.**

The entry into the residence was illegal, it was performed without consent a search warrant or probable cause and any items discovered after the illegal entry were tainted as they were discovered as an exploitation of the prior illegality. Use of any evidence discovered after the illegal entry into the residence is fruit of the poisonous tree and should be suppressed. Wong Sun v. United States, 371 U.S. 471, 479 (1963).

## CONCLUSION

For the foregoing reasons the defendant respectfully requests that his motion to suppress

be granted. All evidence obtained as a result of the illegal entry into the defendant's residence

should be suppressed.

The defendant further submits this motion on the testimony at the evidentiary hearing and

this memoranda and **does not** request oral argument before this Court on this motion.

RESPECTFULLY SUBMITTED this 16th day of December, 2003.

Benjamin A. Hamilton
Attorney for Defendant

## Certificate of Mailing

I hereby certify that on the 16th day of December, 2003, a true and correct copy of the

foregoing Defendant's Incorporated Memorandum in Support of Motion to Suppress Evidence

Based on Illegal Entry into Defendant's Residence was mailed, postage prepaid, addressed as

follows:


Veda M. Travis
Assistant United States Attorney
185 South State Street #400
Salt Lake City, Utah 84111-1506